# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Docket no. 2:18-cr-00063-GZS |
| RICHARD DANIELS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION
## RE: DISMISSAL OF COUNTS 12 & 13 (ECF NO. 402)

Before the Court is the Motion to Dismiss by Defendants Brian Bilodeau & Brian Bilodeau LLC (together, the "Bilodeau Defendants") (ECF No. 402). For reasons stated herein, the Court DENIES the Motion.[1]

**I.     BACKGROUND[2]**

Via the Motion to Dismiss, the Bilodeau Defendants ask this Court to dismiss two specific counts of the Superseding Indictment: (1) Count 12, in which Bilodeau, along with co-defendant MR, LLC, is charged with the manufacture of more than 100 marijuana plants in violation of 21 U.S.C. § 841(b)(1)(B), and (2) Count 13, in which Bilodeau is charged with possession with intent to distribute more than 50 kilograms of marijuana in violation of 21 U.S.C. § 841(b)(1)(C). These

---

[1] The Court notes that this Motion was joined by Defendant MR, LLC ("MR") (ECF No. 409). MR indicates he seeks dismissal of Counts 12 and 25 for the reasons stated in the Bilodeau Defendants' Motion to Dismiss. Additionally, Defendants Tyler Poland, Ty Properties, LLC & Ty Construction, LLC (together, the "Poland Defendants") have also joined the Motion to Dismiss (ECF No. 442). Because the Poland Defendants are not named as Defendants in Counts 12, 13 or 25, it is unclear that they have standing to join the Motion to Dismiss.

[2] To the extent that the Court's Order on Defendants' Motions to Dismiss or Enjoin Prosecution (ECF No. 675) addresses related issues and includes related factual findings regarding the Government's destruction of seized marijuana, the Court incorporates those findings into its analysis here without repeating them.

charges stem from the February 27, 2018 execution of two search warrants; the first on Bilodeau's residence, located at 72 Danville Corner Road, Auburn, Maine, and the second on a warehouse containing a state-sanctioned medical marijuana production, which was located at 230 Merrow Road, Auburn, Maine. As the Government has acknowledged, it has kept only "representative samples" of the marijuana seized from these locations on February 27, 2018; the remainder of the seized marijuana was "transported . . . to an incineration facility where it was destroyed." (Gov't Response (ECF No. 496), PageID # 1491.)

Defendants argue that this destruction should lead to the dismissal of Counts 12 and 13. Defendants support their Motion with the affidavit of Hillary Lister (ECF No. 402-1), who is "an expert [in the] cultivation and preparation of marijuana for medical use by caregivers and patients in Maine." (Id., PageID # 1201.) Lister opines that if the destroyed marijuana had been preserved she would be better able to determine whether Bilodeau's possession complied with the various limits on weight and plant maturity associated with Maine's medical marijuana program. (See id., PageID #s 1221-22.)

**II.   LEGAL STANDARD**

"[A] defendant has a due process right to request and receive evidence that the government possesses which is material to his guilt or punishment." United States v. Femia, 9 F.3d 990, 993 (1st Cir. 1993). The First Circuit has recognized "a tripartite test to determine whether a defendant's due process rights have been infringed by law enforcement's failure to preserve evidence." Id. First, the Court must consider whether the evidence in question was "material exculpatory evidence" or "potentially useful evidence" at the time it was destroyed. Illinois v. Fisher, 540 U.S. 544, 549 (2004) (internal quotations and citations omitted). Second, the Court must determine whether the evidence was destroyed in "bad faith," as compared to destroyed by

2

officers "acting in good faith and in accord with their normal practice." Arizona v. Youngblood, 488 U.S. 51, 56, 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); California v. Trombetta, 467 U.S. 479, 488 (1984) ("In failing to preserve breath samples for respondents, the officers here were acting in good faith and in accord with their normal practice.") (internal citations and quotations omitted). Finally, the Court must consider what the First Circuit has termed, "the irreplaceability requirement." Olszewski v. Spencer, 466 F.3d 47, 58 (1st Cir. 2006) (holding that "proof of irreplaceability is required in both apparent and potential exculpatory evidence cases"). In other words, whether a defendant has shown that "he was unable to obtain comparable evidence by other reasonably available means." Id. at 59 (internal quotations omitted).

### III. DISCUSSION

Based on the pretrial record currently before the Court, the Court concludes that Defendants have not established an affirmative answer to any of the three just-described inquiries; thus, they are not entitled to pretrial dismissal of the specific charges in question.

**A. The destroyed marijuana was not materially exculpatory.**

First, the Court readily concludes that the destroyed marijuana evidence was only "potentially useful" evidence at the time of its destruction. As an initial matter, Defendants essentially admit that the destroyed material in fact contained marijuana, which remains a Schedule I controlled substance that may not be legally manufactured or distributed under 21 U.S.C. § 841(a).[3] See 21 U.S.C. § 812(c)(c)(10). However, Defendants argue the unpreserved evidence

---

[3] In the Court's view, this position distinguishes Defendants from a hypothetical hemp farmer arguing that if the destroyed plants were still available he would seek to establish that the plants were hemp and by definition not a Schedule I controlled substance. See 21 U.S.C. § 802(16) (exempting "hemp" from the definition of marijuana) & 7 U.S.C. § 1639o ("The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds

3

would establish their status as caregivers growing marijuana in accordance with the laws and rules then governing Maine's medical marijuana program. In Defendants' view, once caregiver status is established they are eligible for protection under the Rohrabacher Amendment and, alternatively, may establish a public authority defense.

To the extent Defendants argue that the destroyed marijuana evidence would have been relevant and helpful in establishing their request for injunctive relief under the Rohrabacher Amendment, the Court has determined after a full evidentiary hearing that Defendants do not qualify for such injunctive relief. Rather, Defendants failed to establish that they were operating in strict compliance with Maine's medical marijuana program regardless of whether the destroyed marijuana was in certain ways compliant with the rules then governing the program. In any event, the Court agrees with the Government that evidence is not materially exculpatory when, at most, it would establish that a defendant's prosecution must be stayed based on an appropriations rider. See United States v. Gentile, 782 F. App'x 559, 562 (9th Cir. 2019) ("[W]hen a criminal defendant seeks to enforce the Congressional appropriations rider prohibiting the use of Department of Justice funds to prevent states from implementing their state medical marijuana laws, the defendant is seeking *injunctive* relief."), cert. denied, No. 19-6378, 2019 WL 6257517 (U.S. Nov. 25, 2019); see also United States v. Evans, 929 F.3d 1073, 1077 (9th Cir. 2019); United States v. Washington, 887 F. Supp. 2d 1077, 1104 (D. Mont. 2012). ("[I]t is ultimately irrelevant whether [a defendant] intended to comply with the State of Montana's medical marijuana law; such information is not exculpatory.")

Turning to the public authority defense, the Court acknowledges that the Bilodeau Defendants and MR have both filed Notices of Intent to Assert the Public Authority Defense (ECF

---

thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.")

4

Nos. 413 & 415). Both Notices identify the January 10, 2018 inspection of 586 Lewiston Junction Road, which was conducted by state compliance specialists, as providing the public authority for their marijuana production. As a matter of law, Defendants contend that evidence material to an affirmative defense can qualify as materially exculpatory evidence. (See Defs. Mot. (ECF No. 402), PageID #s 1191 & 1193.) The Court generally agrees with this legal proposition. See, e.g., United States v. Udechukwu, 11 F.3d 1101, 1106 (1st Cir. 1993) (concluding that the Government engaged in "severe and deliberate" non-disclosure by failing to provide the defendant information that would have "dramatically corroborated" her duress defense); c.f. United States v. Ruiz, 536 U.S. 622, 629–33 (2002) (concluding defendant can waive right to government's required disclosure of evidence related to any affirmative defense).

However, in the Court's view, Defendants cannot establish that the destroyed marijuana would assist them in establishing a public authority defense. First, as the Government asserts in its Response to Defendants' Notice of Public Authority Defense (ECF No. 499), it is generally accepted that local and state officials with apparent authority cannot provide a basis for a public authority defense to a violation of federal law. See, e.g., United States v. Alvarado, 808 F.3d 474, 484 (11th Cir. 2015) ("[T]he government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question."); United States v. Miles, 748 F.3d 485, 489 (2d Cir. 2014) (collecting cases & explaining that courts "have widely and unanimously adopted the rule that a defendant charged with violating a federal crime must show reliance on the advice or authority of federal officials or agents to invoke this defense"); United States v. Sariles, 645 F.3d 315, 318 (5th Cir. 2011) ("[T]he defense of public authority requires the defendant reasonably to rely on the actual, as opposed to apparent, authority of a government official to engage him in covert activity.") In addition to this

5

legal impediment, no evidence suggests that the Government possessed information that Defendants had a basis for asserting a public authority defense at the time the seized marijuana was destroyed, nor did they have any basis for believing that the destroyed marijuana would be material to such an apparent affirmative defense.[4] Given these factual and legal impediments, the Court declines to find that the destroyed marijuana would materially assist Defendants in establishing a public authority defense.

Rather, on the record presented, Defendants have only established that the destroyed marijuana is, at best, potentially useful evidence. See, e.g., United States v. Montgomery, 676 F. Supp. 2d 1218, 1241 (D. Kan. 2009) ("In cases involving the destruction of marijuana plants, courts have generally found that Youngblood—rather than Trombetta—applies, *i.e.* that the destroyed marijuana plants constitute only potentially useful evidence as opposed to evidence with apparent exculpatory value . . . .")

### B. The Government did not destroy the seized marijuana in bad faith.

Second, on the current record, Defendants have not established that the seized plant material was destroyed in bad faith. Magraw v. Roden, 743 F.3d 1, 8 (1st Cir. 2014) ("[W]hen the evidence is merely potentially useful to the defense (that is, when its exculpatory value was not apparent before its destruction) . . . the defendant cannot prevail on his due process claim unless he establishes that the state acted in bad faith.") (citing Youngblood). To the extent that Defendants have documented irregularities in the inventory process and the apparent same-day destruction of the seized marijuana, these irregularities "can at worst be described as negligent."

---

[4] The Court also notes that it is not clear that the destroyed marijuana evidence, which was seized from 230 Merrow Road and 72 Danville Junction Road, can be tied to the asserted January 10, 2018 finding of compliance at 586 Lewiston Junction Road.

Youngblood, 488 U.S. at 58; see also United States v. Coots, 408 F. App'x 968, 973 (6th Cir. 2011) (declining to find bad faith when officers had "acted in accordance with their normal practice of preserving only those plants necessary for laboratory testing"). On the record presented, Defendants have not shown that the Government acted in bad faith by failing to preserve the full quantity of seized marijuana.

### C. Defendants have not met the irreplaceability requirement.

Regardless of what motivates the Government's destruction of evidence, the First Circuit has explained that a failure "to preserve *irreplaceable evidence* possessing exculpatory value that is apparent before its destruction" can be a due process violation. Magraw, 743 F.3d at 7–8 (emphasis added). In Trombetta, the Supreme Court declined to find breath samples irreplaceable based on the defendants' ability to inspect the government's testing equipment, impeach, and cross-examine as adequate "alternative means of demonstrating . . . innocence." 467 U.S. at 490.

Here, the Government has produced for Defendants' use photographs of the destroyed marijuana and videos documenting the process by which the seized marijuana was weighed, along with representative samples of marijuana for inspection and testing. With this evidence in hand, Defendants have already shown at the evidentiary hearing held in October that they have the ability to cross-examine and impeach the government's quantity calculations, as well as present the testimony of their own experts. At trial, similar strategies may well "raise doubts in the mind of the factfinder" as to the Government's evidence. Id.

Thus, while the Court acknowledges that Defendants have been denied the opportunity to independently weigh and inspect all of the marijuana seized, the Court concludes that the destroyed amounts cannot be properly characterized as irreplaceable evidence in light of the evidence that

7

remains available.[5] In short, the Court concludes that that Defendants are not "without alternate means of demonstrating their innocence." <u>Olszewski v. Spencer</u>, 466 F.3d 47, 57 (1st Cir. 2006) (quoting <u>Trombetta</u>, 467 U.S. at 490).

## IV. CONCLUSION

For the reasons just stated, the Court DENIES the Bilodeau Defendants' Motion to Dismiss (ECF No. 402). This denial also applies to MR and the Poland Defendants to the extent that they joined this Motion to Dismiss.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 20th day of December, 2019.

---

[5] Given the logistical limitations of maintaining live plants as well as the Court's limited ability to accept and allow jury inspection of large contraband exhibits, it is not feasible to expect that all of the seized marijuana would be received as an exhibit at trial. To be clear, Defendants do not suggest that this was their plan in the absence of the Government's destruction. Rather, they assert that they should have had an opportunity to independently inspect and test the marijuana. Those inspections and tests might then have become trial exhibits.